**In re E.F., Appellant.**

**No. 96–FS–1969.**

District of Columbia Court of Appeals.

Argued Oct. 21, 1999.
Decided Nov. 12, 1999.

Alex C. Lakatos, with whom William T. Lake, Washington, DC, and Stephen A. Weisbrod, New York City, were on the brief, for appellant.

Sidney Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, Rosalyn Calbert Groce, Director, Policy and Appeals Branch, and Terrence A. Coles, Assistant Corporation Counsel, were on the brief, for the District of Columbia.

Before STEADMAN, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

Appellant, a juvenile, was adjudicated delinquent based on a finding by the trial court that he had committed second degree child sexual abuse (D.C.Code § 22–4109 (1996)). That crime prohibits sexual contact with a child by a person who is at least four years older than the child.[1] The evidence at trial established that appellant, who was seventeen years old at the time, had sexual contact with twelve-year-old T.M. by conduct that, according to the trial court, included choking her, placing her on the bed and "humping" her, with his penis touching her vagina through their clothing.

The only evidence of appellant's age came from his mother who, over appellant's objection, testified to his date of birth and age. Appellant contends on appeal, as he did below, that the courts of this jurisdiction should adopt a parent-child adverse testimonial privilege, which would have prevented his mother's testimony. Also, following the verdict, appellant unsuccessfully moved for judgment of acquittal on the ground that the government had failed to prove that he knew or should have known of T.M.'s age (and hence the statutory age differential). On appeal, he renews that challenge to the lack of proof of scienter. We reject both arguments and affirm.

## I.

The parties have briefed at length the issue of whether this court should adopt a broad parent-child testimonial privilege. The government cites abundant decisional law, federal and state, rejecting such a privilege. Appellant cites contrary authority, primarily law review articles, urging adoption of the privilege and urges that the special purpose of juvenile proceedings—where the primary focus is on "the welfare and rehabilitation of the child rather than simply that child's factual guilt or innocence," *In re D.H.*, 666 A.2d 462, 472 (D.C.1995)—makes them an especially suitable forum in which to apply a privilege holding parent-child confidences inviolate, at least qualifiedly. The government, in turn, argues that such an impediment to learning the truth about a child's behavior, and hence whether and to what extent the child needs treatment, is antithetical to the rehabilitative purpose of the juvenile justice system.

■ Interesting though this dispute may be, the present case requires us only to decide a narrower question. At issue is not the asserted importance of protecting confidential communications between parent and child. Appellant's mother was called to testify for the sole purpose of stating his date of birth and age. Certainly when no confidential communications are involved (and we consider the matter

[1] "Sexual contact" is defined by D.C.Code § 22–4101(9). A "child" is defined by § 22–4101(3) as a person under the age of sixteen.

no further), there is no convincing reason for this court in either juvenile or adult proceedings to erect a privilege lacking any historical pedigree, largely unrecognized by courts or legislatures, and operating as do all such privileges to obstruct the flow of relevant information to the trier of fact on material issues.

■ In an opinion similarly not addressing any privilege for confidential communications but rejecting a broad testimonial privilege for parents and their children, one court has accurately stated the general principles as follows:

> Testimonial privileges are exceptions to the general duty imposed on all people to testify. Such privileges diminish the evidence before the court, and contravene the fundamental principle that the public ... has a right to every man's evidence. As such, they must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.

*Three Juveniles v. Commonwealth*, 390 Mass. 357, 455 N.E.2d 1203, 1205 (1983) (citations and internal quotation marks omitted). *See also Jaffee v. Redmond*, 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). To our knowledge, no federal court of appeals or state highest court has recognized a parent-child privilege, even limited to confidential communications. *See In re Grand Jury*, 103 F.3d 1140, 1147–48 (3d Cir.1997) (compiling cases). The privilege did not exist at common law, *see United States v. Ismail*, 756 F.2d 1253, 1257–58 (6th Cir.1985), and the experience of other jurisdictions in almost uniformly rejecting a parent-child privilege of the scope appellant seeks is strong reason to reject that bar to relevant testimony. *See*, by contrast, *Jaffee*, 518 U.S. at 13, 116 S.Ct. 1923 ("the existence of a consensus among the States indicates that 'reason and experience' support recognition of the [psychotherapist] privilege"). Excluding testimony by a parent or child about nonconfidential matters does not promote "sufficiently important interests," *Trammel*, 445 U.S. at 51, 100 S.Ct. 906, to outweigh the need for that evidence in delinquency or criminal proceedings.[2] Moreover, "[t]he legislature ... is institutionally better equipped to perform the balancing of the competing policy issues required in deciding whether the recognition of a parent-child privilege is in the

2. Although, as pointed out, we have no occasion to address the issue of a parent-child confidential communications privilege, the Third Circuit's reasoning is persuasive on the question before us:

> An even more compelling reason for rejecting a parent-child privilege stems from the fact that the parent-child relationship differs dramatically from other relationships. This is due to the unique duty owing to the child from the parent. A parent owes the duty to the child to nurture and guide the child. This duty is unusual because it inheres in the relationship and the relationship arises automatically at the child's birth.
>
> If, for example, a fifteen year old unemancipated child informs her parent that she has committed a crime or has been using or distributing narcotics, and this disclosure has been made in confidence while the child is seeking guidance, it is evident to us that, regardless of whether the child consents or not, the parent must have the right to take such action as the parent deems appropriate *in the interest of the child*. That action could be commitment to a drug rehabilitation center or a report of the crime to the juvenile authorities. This is so because, in theory at least, juvenile proceedings are undertaken solely in the interest of the child. We would regard it intolerable in such a situation if the law intruded in the guise of a privilege, and silenced the parent because the child had a privilege to prevent disclosure.

*In re Grand Jury*, 103 F.3d at 1153 (emphasis in original). Even the dissenting judge in *In re Grand Jury*, on whose opinion appellant relies, recognized a significant distinction between a privilege for confidential communications and one extending to non-confidential matters as well. *See id.* at 1157–58 & n. 1 (Mansmann, J., concurring and dissenting).

best interests of society." *In re Grand Jury,* 103 F.3d at 1154; *see Three Juveniles,* 455 N.E.2d at 1205–06. The trial court did not err in rejecting appellant's request to bar his mother's testimony as to his date of birth and age.

## II.

█ Appellant contends that he was wrongly found guilty of violating D.C.Code § 22–4109 because the government failed to prove—and the trial court failed to find—that he *should have known* the child victim's age or the difference in years between them.[3] He concedes that traditional "statutory rape" crimes such as this jurisdiction's former carnal knowledge statute, D.C.Code § 22–2801 (1989), included no such scienter requirement. *See generally Morissette v. United States,* 342 U.S. 246, 251 n. 8, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *United States v. Brooks,* 841 F.2d 268, 269–70 (9th Cir.1988). But he argues that, while the legislature effectively carried forward the former § 22–2801 in the present crime of *first* degree child sexual abuse (D.C.Code § 22–4108, "engaging in a sexual act"), it criminalized substantially more conduct in § 22–4109 by prohibiting "sexual contact" in addition to "sexual act[s]," and so the court should read the latter statute to impose a scienter (or "should have known") requirement so as to avoid punishing potentially "innocent" conduct. We reject that argument.

The *former* analogue to second degree child sexual abuse was the crime of indecent liberties with a minor (D.C.Code § 22–3501(a) (1989)).[4] Notably, as to neither carnal knowledge nor indecent liberties—for both of which the child had to be under 16—was the government required to prove that the defendant knew or should have known the child's age. *See* D.C.Code § 22–3501(c) (1989); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.73 (1978 ed.). Nothing in the present statutory scheme implies that the Council of the District of Columbia, in revising the definition of sexual crimes against children, meant to impose a knowledge requirement not theretofore in existence.[5] Indeed, it expressed itself quite to the contrary, because D.C.Code § 22–4111(a) provides that "mistake of age" is not "a defense to a prosecution under §§ 22–4108 to 22–4110."

Appellant would have us construe this section as discounting only subjective but not objectively reasonable "mistakes"—it relieves the prosecution, in other words, of having to prove that the defendant actually knew of the child's age or of the years between them, but not of having to prove that he was at least negligent in not ascertaining those facts. Given the unqualified statutory language (*"mistake* of age," not "reasonable" versus "unreasonable" mistake) and the history we have recited, there is not the slightest reason to infer that the drafters had that distinction in mind. Moreover, since what someone actually knew is often provable only circumstantially, it is unreasonable to think that the legislature made those circumstances irrelevant on the issue of actual knowledge only to make them critical—with all doubts resolved against guilt—on what the defendant "should have known."

Appellant cites *United States v. X–Citement,* 513 U.S. 64, 115 S.Ct. 464, 130

---

3. We pretermit the issue, not raised by the government on appeal, of whether appellant forfeited this argument by not raising it prior to the finding of guilty.

4. Similarly, the former crime of enticement (D.C.Code § 22–3501(b) (1989)) has been replaced by present D.C.Code § 22–4110 (enticement by a person at least 4 years older than the child).

5. Enacted as part of the Anti–Sexual Abuse Act of 1994, D.C. Law 10–257, D.C.Code § 22–4101 *et seq.,* the child sex abuse provisions were part of an endeavor by the Council to make the existing laws against rape and sexual abuse "more inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur." COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, BILL 10–87, THE "ANTI-SEXUAL ABUSE ACT OF 1994," at 1 (1994).

L.Ed.2d 372 (1994), in support of the supposed need to read § 22–4109 as requiring proof of scienter. But that case, which involved the crime of transporting interstate a visual depiction of a minor engaging in sexually explicit conduct, differs from this case in key respects. First, unlike here, in the statute the Supreme Court construed Congress had not declared its "express ... intent" to rule out mistake of fact, *id.* at 72, 115 S.Ct. 464; indeed, the proscribed transport of visual depictions had to be done "knowingly." Moreover, the Court distinguished carefully between visual depictions of minors and personal confrontations with a minor, in that regard noting its prior recognition in *Morissette* that the traditional presumption of a scienter requirement for offenses against " 'the person, property, or public morals" ' expressly " 'excepted sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." ' *X–Citement,* 513 U.S. at 72 n. 2, 115 S.Ct. 464. "[A]s in the criminalization of pornography production at 18 U.S.C. § 2251," the Court explained, "the perpetrator [of sex offenses] confronts the underage victim personally *and may reasonably be required to ascertain the victim's age." Id.* (emphasis added).

 Appellant argues finally that if proof of knowledge (actual or constructive) is unnecessary to conviction under § 22–4109, it is impossible to show that a juvenile found to have committed the offense had a "guilty mind" and so is in need of rehabilitation. *See* D.C.Code § 16–2301(6) (1997) (defining juvenile as one who has committed a delinquent act "and is in need of care or rehabilitation"). The argument has no merit. The legislature "create[d] a four-year age differential to focus the offense around sexual conduct that is inherently coercive due to the age difference between the participants." COMMITTEE REPORT, *supra* note 4, at 4. That same differential—and the same "inherently coercive"

nature of the conduct—created what amounts to an irrebuttable presumption that the offender knows the age of the victim. Put another way, the statute imposes a duty on the actor, under pain of strict liability, to determine the age of the victim before having sexual contact with her. That being so, common sense dictates that by engaging in the forbidden sexual contact with a child the offender may be—indeed, presumptively is, *see* D.C.Code § 16–2317(c)(2)—in need of rehabilitation.

Accordingly, the adjudication of delinquency is

*Affirmed.*